UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **FREDERICK BELL** | **CIVIL ACTION NO. 10-1422-P** |
| **VERSUS** | **JUDGE STAGG** |
| **LARRY DEAN, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Frederick Bell ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on September 10, 2010. Plaintiff is currently incarcerated at the Richland Parish Detention Center, but claims his civil rights were violated by prison officials while incarcerated at the Bossier Medium Security Facility in Plain Dealing, Louisiana. He names Larry Dean and the Bossier Medium Security Facility as defendants.

Plaintiff claims he was transferred to the Bossier Medium Security Facility on April 8, 2010, for the work release program. He claims that after he arrived, Lt. Boyer informed him that he would not be participating in the work release program. He claims that after he filed a grievance regarding his work release denial, Lt. Boyer informed him he was denied participation in the program because of his criminal history. Plaintiff claims the real reason

he was denied participation in the program is because he is black and his fiancé is white.

Plaintiff claims that because he was housed at the Bossier Medium Security Facility, he was denied the rights and privileges that inmates receive at DOC facilities. He claims he was denied recreation time and good-time classes. He further claims he was not provided underwear or a top sheet. He claims he was provided only one jumpsuit and it was washed only once a week.

Plaintiff claims DOC inmates, pretrial detainees, and federal inmates were housed together. He claims this affected his safety and subjected him to lawsuits by pre-trial or federal inmates. He claims that at a DOC facility, he would only be housed with DOC inmates.

Plaintiff claims that he had a rash all over his body. He claims the facility only tested inmates for TB, whereas DOC facilities test inmates for everything before they are housed in the general population. He claims he was not tested for TB for nine months.

Plaintiff claims he was denied vocational training because no classes were offered. He claims he was unable to build a financial foundation for his return to society. He claims he was denied good time classes because no classes were offered. He claims he was only allowed to attend the Acts and Celebrate Recover Class for one hour every two weeks.

Plaintiff claims that as of October 4, 2010, he had not attended the re-entry class since August 25, 2010. He claims the re-entry class is a 90 day class that is worth 45 days of good time. He claims inmates at other facilities receive 90 days of good time for the re-entry class and all other classes.

Plaintiff further claims inmates were denied good time credits when they apply for them. He claims Larry Dean denied inmates good time for the Celebrate Recovery and Acts class. Plaintiff claims he was denied the right to reduce his sentence because there were no classes that allowed him to earn good-time credits.

Plaintiff claims he was subjected to strip searches after going to classes. He claims he did not leave the building for these classes and was always under the observation of a deputy or a camera. Plaintiff claims he felt violated because inmates at DOC facilities are not strip searched unless they are caught with contraband. He claims he suffered mental injuries.

Plaintiff claims he was denied adequate recreation including sports and outside activities. Plaintiff claims DOC inmates were only allowed to shower between 3:00 a.m. and 10:00 a.m. He claims the new shower times are 7:00 a.m. to 10:00 a.m. and 7:00 p.m. to 10:00 p.m. He claims DOC inmates could not exercise in the dorm or go outside because of the showers times. He claims his health decreased because of the inadequate recreation time.

Plaintiff claims he was on lock-down 24 hours a day even though he had no write ups or disciplinary actions. He claims he was not allowed one hour of recreation time like inmates at DOC facilites.

Plaintiff claims the food was served on cold, wet trays and that this can cause hepatitis. He further claims the hot foods was not served hot and that this causes internal

diseases such as stomach cancer and colon cancer because the food is not digested properly.

Plaintiff claims the food portions were inadequate. He claims inmates received one bologna sandwich and less than an ounce of beans for lunch five times a week. He claims inmates received a hot dog tray for lunch two times a week. He claims he did not receive adequate portions of fruits because he only received a quarter of an orange for breakfast on Friday and Saturday morning.

Plaintiff claims that if an inmate did not have canteen purchases, he basically starved. He also claims the canteen prices were extremely inflated.

Plaintiff claims inmates were not allowed to follow the proper chain of command when they had issues. He claims deputies intercepted mail that was addressed to higher ranking officers.

Accordingly, Plaintiff seeks monetary compensation, to be transferred to another facility, and injunctive relief.

## LAW AND ANALYSIS

**Work Release Program**

Plaintiff claims he was informed that he was denied participation in the work release program because of his criminal history. Plaintiff also claims he was denied participation in the work release program because he is black and his fiancé is white. To the extent Plaintiff claims that he was denied equal protection, this claim is not cognizable.

The Equal Protection Clause requires that similarly situated persons be treated alike. Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313

(1985). To establish an equal protection claim, a plaintiff must establish that (1) the state created two or more classifications of similarly situated persons that were treated differently; and (2) the classification had no rational relation to any legitimate governmental objective. See Johnson v. Rodriguez, 110 F.3d 299, 306-07 (5th Cir.), cert. denied, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997).  Also, a plaintiff may also state an equal protection claim if he alleges that his disparate treatment was motivated by any illegitimate animus or ill-will. See Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir.2000).

Plaintiff does not allege or show that he was treated differently from other similarly situated inmates.  Plaintiff does not meet the first criteria for an equal protection violation and has therefore failed to state a claim upon which relief can be granted.  Furthermore, Plaintiff admits he was informed he was denied participation because of his criminal history. Plaintiff does not dispute his criminal history.  Thus, his preclusion served the rational and legitimate penological objective of maintaining security and order in the prison.  See Smith v. Bingham, 914 F.2d 740, 742 (5th Cir.1990); see also Freeman v. Tex. Dept. of Criminal Justice, 369 F.3d 854, 863–64 (5th Cir.2004).  Thus, Plaintiff has failed to state an equal protection claim based on race discrimination.  Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Classification**

Plaintiff claims DOC inmates, pre-trial detainees, and federal inmates were housed together and that this effected his safety and subjected him to lawsuits.  These are not claims that this court can resolve.  Federal courts should not, under the guise of enforcing

constitutional standards, assume the superintendence of state prison administration. See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline, and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).

The United States Supreme Court has held that it is for state prison authorities to decide where a state prisoner is to be incarcerated, and that a prisoner has no right to challenge his place of incarceration. See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Under Olim and Meachum, Plaintiff has no right to challenge his incarceration at

a non-DOC facility.

Accordingly, Plaintiff's claims regarding his classification and place of incarceration are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

**Screening for Communicable Diseases**

Plaintiff next complains that incoming inmates are not routinely tested for communicable diseases HIV, TB, and hepatitis. However, it is clear that no such screening of all inmates is constitutionally required. See Gibbs v. Grimmette, 254 F.3d 545, 550 (5th Cir.2001); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at 4 (E.D.La. Oct. 1, 2009). Accordingly, this claim must be dismissed with prejudice as frivolous.

**Vocational Training, Good-Time Credit, and Re-Entry Classes**

Plaintiff claims the facility did not offer vocational training, good-time credit classes, and re-entry classes. He further claims that he was denied the right to reduce his sentence because the facility did not offer good-time credit classes.

In order to state a constitutional claim for either a procedural or substantive due process violation, Plaintiff must demonstrate that he was "denied a cognizable liberty or property interest clearly established either by state law or the United States Constitution." Wooley v. City of Baton Rouge, 211 F.3d 913, 919 (5th Cir.2000); accord Sandin v. Conner, 515 U.S. 472, 481–83, 115 S.Ct. 2293 (1995) (a prisoner has a liberty interest only in "freedom[s] from restraint ... impos[ing] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); Bryan v. City of Madison, 213 F.3d 267,

274 (5th Cir.2000) (property interest). However, neither the Due Process Clause, nor any other provision of the Constitution affords inmates the constitutional right to educational or rehabilitative programs or services. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir.1988); see also Smith v. Boyd, 945 F.2d 1041, 1043 (8th Cir.1991) (prisoners do not have a constitutional right to "social services."); Newman v. State of Alabama, 559 F.2d 283, 292 (5th Cir.1977), rev'd in part on other grounds, Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057 (1978) (prisoners do not possess a protected liberty interest in educational programs, recreation opportunities, or in avoidance of being transferred to facilities where the programs are less comprehensive); Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49 (5th Cir.1995) (no federal constitutional right to participate in an education or rehabilitative program while incarcerated).

Furthermore, prisoners do not have a protected liberty interest in their classification status or in the opportunity to earn good-time credits. See Luken v. Scott, 71 F.3d 192, 193 (5th Cir.1995) (loss of opportunity to earn good-time credits is merely a collateral consequence of the prisoner's custodial status which does not create a constitutionally protected liberty interest). Prisoners who are entitled to release on mandatory supervision have a protected liberty interest in previously earned good-time credits, but they are not constitutionally entitled to earn such credits. Malchi v. Thaler, 211 F.3d 953, 959 (5th Cir.2000) (the relation of good time-earning status to a prisoner's release date is too speculative to create a liberty interest).

Plaintiff is a DOC inmate and therefore his placement is solely within the purview of

the DOC. Broad discretionary authority is afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979 (1974). To hold that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts. Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538 (1976).

Presumably, Plaintiff claims he is treated less favorably than similarly situated DOC inmates who enjoy these opportunities at regular DOC facilities. However, disparate impact alone does not suffice to state an equal protection violation. Johnson v. Rodriguez, 110 F.3d 299, 306–307 (5th Cir.1997) (citation omitted). Moreover, if "the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action – even if irrational – does not deny them equal protection of the laws." Id. Here, there is no evidence that Defendants exercise authority over the opportunities available to inmates housed at other DOC facilities; thus, there is no evidence that they created two or more classifications of similarly situated individuals who were treated differently. Oladipupo v. Austin, 104 F.Supp.2d 643, 651 (W.D. La.2000) (citing Rivera v. Senkowski, 62 F.3d 80 (2nd Cir.1995)).

Finally, Defendants' alleged failure to provide Plaintiff with the types of services and programs he desires does not constitute cruel and unusual punishment in violation of the Eighth Amendment. As explained above, the lack of rehabilitative programs does not by

itself constitute cruel and unusual punishment. The Eighth Amendment does not require the provision of every amenity needed to avoid mental, physical, or emotional deterioration. See Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir.1986), citing, Newman v. Alabama, 559 F.2d 283, 291 (5th Cir.1977), cert. denied, 438 U.S. 915, 98 S.Ct. 3144, 57 (1978).

Accordingly, this claim should be dismissed with prejudice as frivolous.

**Strip Searches**

Plaintiff claims he was subjected to strip searches after going to classes. He claims he did not leave the building for these classes and was always under the observation of a deputy or a camera. Plaintiff claims he felt violated because inmates at DOC facilities are not strip searched unless they are caught with contraband. He claims he suffered mental injuries.

To the extent Plaintiff claims he was strip searched without probable cause, he fails to state a claim upon which relief can be granted. Probable cause is not required to conduct strip searches on convicted inmates. Bell v. Wolfish, 441 U.S. 520, 558-59 (1979). The Supreme Court and the Fifth Circuit have explained that the penological interest is the maintenance of security and the location of contraband. See Oliver v. Scott, 276 F.3d 736, 743 (5th Cir. 2002).

Plaintiff claims he was treated less favorably than inmates at DOC facilities who are only strip searched if they are caught with contraband. As previously discussed, disparate impact alone does not suffice to state an equal protection violation. Johnson, 110 F.3d at

306–307   Here, there is no evidence that Defendants exercise authority over the strip searches of inmates housed at DOC facilities; thus, there is no evidence that they created two or more classifications of similarly situated individuals who were treated differently. Oladipupo, 104 F.Supp. at 651.

Accordingly, this claim should be dismissed with prejudice as frivolous.

**Conditions of Confinement**

Plaintiff claims he was denied adequate recreation, hot food, and clean clothing and linens. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee the safety of inmates.  See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991).   First, the deprivation alleged must be sufficiently serious. See id., 111 S. Ct. at 2324.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)).   Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.   In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court recently defined as knowing of and disregarding an excessive risk to inmate health or safety.  See id., 114 S. Ct. at 1979. Furthermore, this court

should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement. Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the Court finds the facts alleged do not support a conclusion that Defendants' conduct was sufficiently harmful enough to deprive Plaintiff of life's basic necessities. See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324. The Court finds that Plaintiff's claims standing alone, simply do not rise to the level of cruel and usual punishment as defined by the jurisprudence. Inmates do not have a protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation ." Lewis v. Smith, 277 F.3d 1373, 2001 WL 1485821 at *1 (5th Cir.2001); Stewart v. Winter, 669 F.2d 328, 336 n. 19 (5th Cir.1982); see also Martin v. Scott, 156 F.3d 578, 580 (5th Cir.1998) (affirming limits on recreation time). "[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." Lewis, 2001 WL 1485821 at *1 (citation omitted). Plaintiff does not claim he was denied all exercise or that he could not exercise in his dorm while he was waiting his turn to shower or after his shower. Furthermore, he has made only the vague, conclusory allegation that his health decreased because of the inadequate recreation time.

Plaintiff's diet-related claims should also be dismissed. The Constitution mandates that inmates be provided " 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" Green v. Ferrell, 801 F.2d 765, 770 (5th Cir.1986) (quoting Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977)) (footnote omitted); See also Eason v. Thaler,

73 F.3d 1322, 1327 (5th Cir.1996) (per curiam) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" Talib v. Gilley, 138 F.3d 211, 214, n. 3 (5th Cir.1998)(quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation ." Id.

Plaintiff does not allege that he was denied anything close to the "minimal civilized measure of life's necessities." Id. Nor did he allege any specific physical harm resulting from the Defendants' alleged dietary failures. He did not claim that he was at all undernourished, or that he lost weight, or suffered any other adverse physical effects as a result of the complained of diet. Plaintiff offered only conclusory allegations that the prison diet was inappropriate and that is insufficient to state a claim for which relief might be granted.

Furthermore, the deprivations alleged by Plaintiff regarding the food serving trays, unsanitary conditions, and underwear and top sheets simply do not support a finding that Defendants' conduct was sufficiently harmful enough to deprive Plaintiff of life's basic necessities. See Wilson, 501 U.S. at 298, 111 S.Ct. at 2324. Plaintiff does not allege that he did not have underwear or a blanket or top sheet, only that it was not issued by the facility. Furthermore, Plaintiff failed to allege that he sustained any harm or injury as a result of his exposure to the complained of conditions other than a rash. In this case, Plaintiff states no

facts that would satisfy the threshold requirements for an Eighth Amendment violation. Thus, the Court does not consider the deprivations alleged to be sufficiently serious.

Accordingly, the conditions alleged do not rise to the level of cruel and unusual punishment and should be dismissed with prejudice as frivolous.

**Lock-Down**

Plaintiff claims he was on lock-down 24-hours a day even though he had no write-ups or disciplinary actions. To the extent Plaintiff contends he was punished without due process, these claims are not cognizable. In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process. The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431. Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner.

Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff does not allege that the disciplinary action affected the duration of his sentence or that the disciplinary action was atypical of the prison environment. To the contrary, Plaintiff's allegations concern the placement in lock-down which is far from "extraordinary." This Court finds that under Sandin, Orellana and Madison, the placement in lock-down does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns. Accordingly, Plaintiff's claims should be dismissed with prejudice as frivolous.

**Canteen Prices**

Plaintiff claims the canteen prices were extremely inflated. The law is clear that inmates have no constitutionally protected interest in purchasing goods through the prison commissary at the cheapest price possible. See Grice v. Blanco, 2007 WL 2908826 (W.D. La. 7/18/07) citing Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) ("[T]he fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."); French v. Butterworth, 614 F.2d 23, 25 (1 st Cir.1980)(holding "there is simply no legal basis for a demand that inmates be offered items for purchase at or near cost"); McCall v. Keefe Supply Co., 71 Fed.Appx. 779, 780 (10th Cir.2003) (stating that an inmate's claim that prison commissary charged "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim). Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Chain of Command**

Plaintiff claims deputies intercept mail addressed to higher ranking officers. In support of his claim, he provides kite communications that were answered by officers other than who they were addressed. Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (W.D. La. 2000); Brown v. Dodson, et al., 863 F. Supp. 284 (W.D. Va. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231. Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts. Flick, supra. Thus, insofar as Plaintiff alleges that the Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983. Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before

or after service of process, and before or after answers have been filed.  See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985).  District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact.  See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objection within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and

that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 7th day of August 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE